UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN CULHANE,<br><br>Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY, et al,<br><br>Defendants. | CASE NO. 14CV76 BEN (KSC)<br><br>**ORDER:**<br>• **GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>• **GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket Nos. 23, 24] |

The parties have filed cross motions for summary judgment seeking a determination whether Plaintiff Kevin Culhane was incorrectly denied long-term disability benefits. (Docket Nos. 23-24.) The Court finds that Defendant Aetna Life Insurance Company ("Aetna") incorrectly denied Culhane coverage for long-term disability benefits and remands the matter for consideration of Plaintiff's entitlement to benefits.

## BACKGROUND

Culhane was covered under a group long term disability policy ("the Policy") issued by Aetna to Culhane's employer, Defendant Ametek, Inc. The Policy provided disability benefits for employees beginning 90 days after their first date of disability.

Culhane worked for Ametek from November 11, 2008 until July 16, 2012, holding a number of positions. Culhane suffered serious health problems, but continued working until his termination with the exception of a period of medical leave from late 2009 into 2010. Following his termination, Culhane sought and was denied disability benefits under the Policy. The remainder of the facts of this case are largely disputed.[1]

Culhane's medical problems began in November 2009. He suffered a spontaneous ruptured bowel necessitating immediate colorectal surgery, hospitalization, and an ileostomy that was reversed two weeks later. A few months later he suffered a diverticulum rupture resulting in hospitalization, another surgery, and a colostomy that could not be reversed for four months. Culhane then suffered a opening in the rectum wall, but was advised further surgery might result in a permanent colostomy. Culhane suffered from abdominal pain, painful defecation, bloody stools, vomiting, fever, chills, fatigue, and low-energy. He was on a liquid diet out of concern for obstructions. During this time he was on medical leave. Despite abdominal pain and frequent bowel movements - ten per day - Culhane returned to work in November of 2010. Work presented problems. In addition to being in significant pain, Culhane was making many visits to the restroom, some 200 yards away, without the ability to control or completely void his bowels. In early 2011, he was diagnosed with what his physician believed was adhesive disease and a hernia that could not be repaired because of the continuing concern of a permanent colostomy. Culhane suffered from anxiety and depression and his physical condition deteriorated. Culhane missed work on many occasions for doctor's appointments and medical procedures throughout this time period.

Aetna does not present contradictory medical evidence, but raises questions about the severity and limitations of Culhane's medical issues, emphasizes the

---

[1] Consequently, the Court is not drawing any conclusions about the facts of the case unless otherwise noted, but rather is providing a general background of the case.

subjective nature of his complaints of abdominal pain, questions whether other issues contributed to his depression and anxiety, disputes that he was disabled prior to his termination, and ultimately disputes whether medical issues were the reason for his performance issues at work. Aetna also takes issue with Culhane's characterization of the medical evidence.[2]

As to Culhane's performance and eventual termination, Aetna and Culhane rely on the same performance reviews, salary increase, and warnings, but unsurprisingly have a different view of his performance. Culhane relies on the favorable portions of his reviews in arguing he was a model employee before he became sick and suggests that the performance issues he had after the onset of his illness resulted from severe and ongoing abdominal pain, depression, and anxiety. Aetna emphasizes the negative or neutral portions of his reviews and characterizes a small raise received a month before he became sick as a negative to suggest his work issues were not the result of his health problems.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). On summary judgment, courts should not "evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (reversing district court where there were genuine issues of material fact in dispute concerning whether claimant was disabled and remanding for bench trial on the record). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,

---

[2] For example, where Culhane states that his doctor found that "any further surgery might make it impossible to reconstruct his abdomen," Aetna notes the medical record states "if he requires any further abdominal surgery we might have difficulty reconstructing his abdomen."

not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[W]hen the parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks omitted).

## II. Standard of Review

The parties agree that this claim is subject to *de novo* review. Under this standard, "the court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007). "[W]hen the court reviews a plan administrator's decision under the *de novo* standard of review, the burden of proof is placed on the claimant." *Muniz v. Amec Constr. Mgmt.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

## III. Denial of Coverage

Aetna denied benefits to Culhane because it concluded that he was not eligible for coverage under the Policy. Aetna's denial was not based on Culhane's medical condition. Rather, Aetna determined Culhane's eligibility for coverage ended when he was terminated and that he did not meet the Test of Disability in the Policy prior to termination. The Court finds Aetna incorrectly denied benefits on this basis because Culhane's eligibility for coverage did not end when he was terminated.[3]

### A. Test of Disability

The Test of Disability in the Policy contains two requirements: (1) "cannot perform the material duties of your own occupation solely because of an illness, injury,

---

[3] Culhane also argues that he was disabled before he was terminated. He submits documentation from his physician that he should not have been working based on his medical condition well before his termination date. Because Aetna's denial was not based on evaluation of his medical condition and the Court is remanding the matter for further consideration of Culhane's entitlement to benefits, the Court need not address this argument.

or disabling pregnancy-related condition; and" (2) "earnings are 80% or less of your adjusted predisability earnings."

Whether Culhane could "perform the material duties of [his] own occupation solely because of an illness [or] injury" is disputed.[4] It also was not the basis for Aetna's denial of coverage. Rather, Aetna's denial of coverage rested on the second prong of the Test of Disability. Culhane was earning his full salary until his termination. Aetna determined that because his eligibility for coverage ended on the day he was terminated and he was earning his full salary up to that point he could not be covered by the Policy and earning 80% or less at the same time.[5] However, if he was covered by the Policy beyond his last day, then he could meet the second prong of the Test of Disability.

**B.     Coverage Beyond the Last Day of Employment**

The question then is whether, contrary to Aetna's conclusion, Culhane was eligible for coverage under the Policy based on his payment of premiums for one week after his last day of work.

///

///

///

---

[4]Aetna has provided documentation that Culhane was terminated as a result of the poor quality of his work, including negative interactions with co-workers. Aetna largely relies on negative portions of Culhane's performance reviews. Culhane has provided documentation of a serious and worsening medical condition that prevented him from doing his job, despite his attempts to do so. Aetna criticizes the medical evidence submitted in support of Culhane's claim that he was disabled, including, for example, his treating physician's opinion that he should not have been working as early as January 2012 because it was not prepared at that time. However, this is consistent with Culhane's efforts to continue working despite his illness. He was not seeking out and obtaining documentation that he could not work at that time because he was attempting to work. It was only when his efforts to continue working failed that he sought and obtained documentation of the onset of his disability.

[5]Although the Court need not reach the issue, Aetna's assertion that to obtain disability benefits Culhane must be actively at work, i.e. "performing his regular duties on a full time basis for the number of hours he was normally scheduled to work," at the same time he was required to be earning 80% or less of his predisability earnings is troubling. Aetna fails to explain how such a combination of facts could arise given an employee working full time would be unlikely to earn 80% or less of his salary.

The Policy contains a section titled "When Coverage Ends," with a subheading for "When Coverage Ends For Employees." It states,

> Your coverage under the plan will end if:
>
> - The plan is discontinued;
> - You voluntarily stop your coverage;
> - The group policy ends;
> - You are no longer eligible for coverage;
> - You do not make any required contributions;
> - You become covered under another plan offered by your employer;
> - Your employment stops for any reason, including job elimination or being placed on severance. This will be the date you stop active work. *However, if premium payments are made on your behalf, Aetna may deem your employment to continue, for purposes of remaining eligible for coverage under this Plan*, as described below:
>   — If you are not actively at work due to illness or injury, your coverage may continue, until stopped by your employer, but not beyond 12 months from the start of the absence.
>   — If you are not actively at work due to temporary lay-off or leave of absence, your coverage will stop on the last full day you are actively at work before the start of the lay-off or leave of absence.
>
> It is your employer's responsibility to let Aetna know when your employment ends. The limits above may be extended only if Aetna and your employer agree, *in writing*, to extend them.

(the Policy at 16 (emphasis added).) Aetna relied on the final bullet, employment stops for any reason. Aetna asserts that Culhane's eligibility under the Policy ended when he was terminated because his employment stopped. Culhane, relying on the exception providing for an extension of eligibility for coverage if premiums are paid, argues his coverage was extended by one week because he paid the premiums for an additional week of coverage beyond his termination. Aetna does not dispute that Culhane paid the premiums for an additional week of coverage and that the premium was never returned. Instead, Aetna argues the payment did not extend his coverage because Aetna and Ametek did not enter into a written agreement to extend

Culhane's coverage.[6]

"Federal law governs the interpretation of ERISA insurance policies." *Deegan v. Cont'l Cas. Co.*, 167 F.3d 502, 507 (9th Cir. 1999) (citing *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995)). ERISA policies must "be interpreted 'in an ordinary and popular sense as would a person of average intelligence and experience.'" *Simkins v. NevadaCare, Inc.*, 229 F.3d 729, 734-35 (9th Cir. 2000) (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990)). Where the policy language is ambiguous, the contra proferentum doctrine applies and the language "is construed against the insurer and in favor of the insured." *Simkins* at 735 (quoting *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1134 (9th Cir. 1996)); *Deegan*, 167 F.3d at 507. In justifying the application of the doctrine to ERISA policies, the Ninth Circuit noted the rule was followed in every state and explained that "'the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence." *Simkins* at 736 (quoting *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir. 1990)). In assessing ambiguity, courts "should 'not artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer *and* any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.'" *Simkins* at 735. (quoting *Evans*, 916 F.2d at 1441) (emphasis added). But, where the language is open to reasonable competing interpretations, it is ambiguous and interpreted against the insurer. *Deegan* at 507.

Aetna interprets the concluding language in the section, "[t]he limits above may be extended only if Aetna and your employer agree, in writing, to extend them" to apply to the exception for continued eligibility for coverage if premium payments are made. Aetna notes that it should apply because it follows the last bullet. Culhane

---

[6] Aetna additionally argues that Culhane did not meet the requirement that he not be at work due to illness or injury. However, as explained below, this issue should be addressed on remand in considering Culhane's medical condition.

argues that the "limits above" refers to the only time limitation in the section, *i.e.* the 12-month limitation applicable if coverage is extended based on payment of premiums. One could also fairly interpret "the limits above" to refer to all the bulleted reasons coverage may end.

The language is open to numerous reasonable interpretations. Although the written agreement requirement might apply to all the reasons, the reason at issue here is different. This reason specifically provides an exception for an extension of coverage based on the payment of premiums, for up to 12 months, if certain criteria are met. "[A] person of average intelligence and experience" could reasonably think that eligibility for coverage is extended if the criteria identified in that section are met. The written agreement language might be interpreted to apply to the exception in addition to all the stated reasons, but it could also reasonably be interpreted to apply to the reasons coverage ends and not to a specifically identified exception with criteria under which eligibility for coverage is extended. This is not a strained, tortured, or twisted reading of the Policy. Because both interpretations are reasonable, the language is ambiguous and must be construed against Aetna. Culhane may have remained "eligible for coverage under the Plan" beyond when his employment stopped because "premium payments [were] made on [his] behalf."[7]

## IV. Remand

Although the Court finds the basis for Aetna's denial was incorrect, Culhane's is not necessarily entitled to disability benefits under the Policy. Aetna's denial was based on eligibility for coverage, not a determination based on his medical condition. The Court acknowledges there is a reference to medical evidence in Culhane's denial of benefits, but the denial was not based on Culhane's medical condition or consideration of whether he could perform the duties of his job in light of that medical

---

[7] The Court rejects Aetna's waiver argument. The Court need not imply a waiver of the Policy based on the payment of premiums because the Policy specifically provides for extension of eligibility based on payment of premiums. There is no need to imply a waiver based on acceptance of premiums when the Policy specifically provides for it.

condition. Remand to the administrator is appropriate to evaluate the evidence concerning Culhane's medical condition and to determine, based on that evidence, if Culhane was unable to perform his job duties due to illness or injury. *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) (summarizing cases and finding remand to administrator for factual determination or reevaluation consistent with the court's interpretation is appropriate).

## CONCLUSION

Culhane's motion for summary judgment is **GRANTED** as to the finding that Aetna incorrectly denied benefits because it failed to extend his eligibility for coverage based on his payment of premiums and is otherwise **DENIED**. Aetna's motion for summary judgment is **GRANTED** as to remand to evaluate Culhane's entitlement to benefits based on his medical condition and otherwise **DENIED**.

**IT IS SO ORDERED.**

DATED: February 16, 2015

HON. ROGER T. BENITEZ
United States District Judge